IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                          Criminal No. 3:25-cr-30

CARSHAWN FULLER
    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANT'S OBJECTIONS TO PSR (the "OBJECTIONS") (ECF No. 56). For the reasons set forth below, the OBJECTIONS will be overruled. Accordingly, the appropriate base offense level to be applied at sentencing is 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(B).

## I. BACKGROUND

Police arrested Carshawn Fuller ("Fuller") on several outstanding arrest warrants. Inside the backpack that Fuller was wearing at the time of his arrest, police found the Taurus PT840 .40 caliber semiautomatic firearm that Fuller pled guilty to possessing, as well as two handgun magazines. One of those magazines is a Taurus brand, 15-round capacity magazine. The second magazine recovered was a visibly long, after-market magazine that held 16 rounds of .40 caliber ammunition.

On December 4, 2025, Fuller filed DEFENDANT'S OBJECTIONS TO PSR (ECF No. 56), objecting to the applicability of the base offense level of 20 under U.S.S.G. § 2K2.1(a)(4)(B). On December

1

8, 2025, the United States filed GOVERNMENT'S RESPONSE IN OPPOSITION TO THE DEFENDANT'S PSR OBJECTION (ECF No. 59). After reviewing those filings, the Court directed Fuller and the Government to file Statements of Position addressing the meaning of the phrase "capable of accepting" in U.S.S.G. § 2K2.1(a)(4)(B)(i)(I). ECF No. 60. The requested briefing was received (ECF Nos. 63, 66, 67, 68, 69, and 70) and argument was presented during the hearings held on January 29 and 30, 2026.

During those hearings, Fuller and the United States jointly stipulated that the phrase "semiautomatic firearm that is capable of accepting a large capacity magazine" is unambiguous, obviating any need for the Court to consider the definition of that phrase provided in Application Note 2 of U.S.S.G. § 2K2.1. Both sides now agree that the only remaining issue for the Court to decide in determining the appropriate base offense level to be applied at sentencing is whether the final adopted version of U.S.S.G. § 2K2.1(a)(4)(B) failed the "logical outgrowth test" because it differed so significantly from the initially proposed amendment, not only in subject matter, but also in scope. ECF No. 66 at 3.

## II. LEGAL STANDARD

In seeking an elevated offense, the United States bears the burden of establishing, by a preponderance of the evidence, that the enhancement is applicable. <u>United States v. Reyna</u>, 336 Fed.

App'x 353, 354 (4th Cir. 2009) (per curiam) (unpublished) (citing United States v. Kiulin, 360 F.3d 456, 460 (4th Cir. 2004)).

### III. DISCUSSION

Fuller and the United States having jointly stipulated that the phrase "semiautomatic firearm that is capable of accepting a large capacity magazine" is unambiguous, the analysis now turns to Fuller's argument that the final adopted language of U.S.S.G. § 2K2.1(a)(4)(B), as it exists today, is invalid because it substantially departed from the terms or substance of the initially proposed amendment, in violation 28 U.S.C. § 994(c) and 5 U.S.C. § 553. ECF No. 66 at 6. To begin, Fuller correctly notes, "[t]he provisions of section 553 of title 5, relating to publication in the Federal Register and public hearing procedure, shall apply to the promulgation of guidelines pursuant to this section" by the United States Sentencing Commission (the "Commission"). 28 U.S.C. § 994(x). This includes the notice-and-comment requirements found in 5 U.S.C. § 553(b) and (c). Fuller contends that the final adopted version of U.S.S.G. § 2K2.1(a)(4)(B) failed the logical outgrowth test because it differed so significantly from the initially proposed amendment not only in subject matter, but also in scope. ECF No. 66 at 3.

On January 27, 2006, the Commission published proposed amendments for 2006 in the Federal Register. 71 Fed. Reg. 4782 (Jan. 27. 2006). The Commission proposed an amendment to U.S.S.G.

3

§ 2K2.1 to address offenses involving "semiautomatic assault weapons" as defined in 18 U.S.C. § 921(a)(30), which had expired on September 13, 2004. Id. at 4789. The Commission noted that, "[a]lthough possession of such a weapon is no longer covered by 18 U.S.C. 921, possession of certain weapons, particularly by a prohibited person, may still be considered an aggravating factor warranting an increase in the base offense level." Id. The proposed amendment presented two options for providing offense level increases for weapons previously covered by 18 U.S.C. § 921(a)(30):

> Under Option One, each of the four base offense level provisions would be based on whether "the offense involved a firearm that is a high-capacity, semiautomatic firearm." "High-capacity, semiautomatic firearm" would be defined as "a semiautomatic firearm that has a magazine capacity of more than [15] cartridges." Option Two would provide an upward departure if the offense involved a high-capacity semiautomatic firearm.

Id. On April 5, 2006, the Commission published as "Exhibit M" its revised proposed amendment to U.S.S.G. § 2K2.1, which, for the first time, included the phrase "semiautomatic firearm that is capable of accepting a large capacity magazine." U.S. Sentencing Comm'n, Public Meeting Minutes, at 56-59 (Apr. 5, 2006), https://perma.cc/H8ZC-ZRBX. On a divided vote, the Commission adopted the revised proposed amendment (Amendment 691), id. at 8-10, which was published in the Federal Register on May 15, 2006, and became effective on November 1, 2006. 71 Fed. Reg. 28069 (May 15, 2006); U.S.S.G. App'x. C, Amend. 691 (Nov. 1, 2006). The

4

changes introduced by Amendment 691 are reflected in the current version of U.S.S.G. § 2K2.1(a)(4)(B).

Fuller argues that the final adopted language of U.S.S.G. § 2K2.1(a)(4)(B), as it exists today, is invalid because it fails to satisfy the notice-and-comment requirements of 28 U.S.C. § 994(x) and 5 U.S.C. § 553 for the reason that the final amendment "substantially depart[ed] from the terms or substance of the proposed [amendment]." Chocolate Mfrs. Ass'n v. Block, 755 F.2d 1098, 1105 (4th Cir. 1985); ECF No. 66 at 6. In turn, Fuller contends that, because the final adopted language of U.S.S.G. § 2K2.1(a)(4)(B) is invalid, the base offense level of 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(B) should not be applied at his sentencing.

On January 15, 2026, the United States filed its Response (ECF No. 67). As to Fuller's "notice-and-comment" argument, the Government asserts that: "(A) the defendant's Administrative Procedures Act (APA) challenge is forfeited, (B) the defendant's APA argument fails on the merits, and (C) any error is harmless." ECF No. 67 at 1. On January 23, 2026, Fuller filed his Reply (ECF No. 70). Fuller argues that: (A) the notice-and-comment issue was not forfeited, (B) on the merits, Amendment 691 was promulgated without proper notice, and (C) "harmless" analysis is not applicable to this challenge. ECF No. 70.

IV. ANALYSIS

A. Meaning of the Phrase "Capable of Accepting"

Fuller and the United States jointly stipulated that the phrase "semiautomatic firearm that is capable of accepting a large capacity magazine" is unambiguous. Both parties having stipulated that the text is not genuinely ambiguous, the Court must now "state that unambiguous meaning . . . ." United States v. Roberts, 787 F.Supp.3d 219, 230 (E.D. Va. 2025); see Kisor v. Wilkie, 588 U.S. 558 (2019); United States v. Boler, 115 F.4th 316 (4th Cir. 2024). When stating the unambiguous meaning, a court may not consider, "in its review or application[,]" the Commission's Commentary that interprets the guidelines provision. Roberts, 787 F.Supp.3d at 230; United States v. Crawford, 792 F.Supp.3d 670, 684 (E.D. Va. 2025) (citing Roberts, 787 F.Supp.3d at 230).

As relevant here, U.S.S.G. § 2K2.1(a)(4)(B) provides that a base offense level of 20 shall be applied if "the (i) offense involved a (I) semiautomatic firearm that is capable of accepting a large capacity magazine . . . ." U.S.S.G. § 2K2.1(a)(4)(B) (emphasis added). Absent a definition in the guidelines provision itself, courts must "construe terms in the Sentencing Guidelines according to their ordinary meaning." United States v. Haas, 986 F.3d 467, 480 (4th Cir. 2021). In so doing, courts routinely turn to dictionaries for assistance. Boler, 115 F.4th at 323; Nat'l Coal. For Students With Disabilities Educ. and Legal Def. Fund v.

6

Allen, 152 F.3d 283, 288-89 (4th Cir. 1998). The words of any enhancement also "must be read in their context and with a view to their place in the overall regulatory scheme." Boler, 115 F.4th at 325 (quoting Lynch v. Jackson, 853 F.3d 116, 121 (4th Cir. 2017)) (alterations and quotation marks omitted).

The operative terms in the phrase "capable of accepting" are not defined in U.S.S.G. § 2K2.1(a)(4)(B)(i)(I). So, the analysis begins by looking at dictionary definitions.

Britannica Online Dictionary defines capable as "able to do something: having the qualities or abilities that are needed to do something." Capable, The Britannica Dictionary, https://www.britannica.com/dictionary/capable, (last visited Jan. 28, 2026).[1] Britannica Online Dictionary defines accept as "to receive or take" and "to be able or designed to take or hold (something)." Accept, The Britannica Dictionary, https://www.britannica.com/dictionary/accept, (last visited Jan. 28, 2026).[2] Based on those definitions, the phrase "capable of

---

[1] Similar definitions of the word "capable" can be found in the Oxford English Dictionary ("[a]ble to take in, receive, contain, or hold; having room or capacity for"), see Capable, Oxford English Dictionary, https://www.oed.com (last visited Mar. 24, 2026) and Merriam-Webster ("having traits conducive to or features permitting something"), see Capable, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/capable (last visited Mar. 24, 2026).

[2] Similar definitions of the word "accept" can be found in the Oxford English Dictionary ("[t]o take or receive (something offered) willingly."), see Accept, Oxford English Dictionary, https://www.oed.com (last visited Mar. 24, 2026) and Merriam-Webster ("to receive (something offered) willingly"), see Accept, Merriam-Webster.com Dictionary,

7

accepting," as used in the context of U.S.S.G. § 2K2.1(a)(4)(B)(i)(I), unambiguously means that a firearm is "capable of accepting" a large capacity magazine if the firearm is one that is <u>able to receive, take, or hold</u> a large capacity magazine. As opposed to what Application Note 2 would require, the unambiguous phrase "capable of accepting" in U.S.S.G. § 2K2.1(a)(4)(B)(i)(I) does not require there to be a large capacity magazine attached to the firearm or in close proximity to the firearm; all that is required by the text is that the firearm be able to receive, take, or hold a large capacity magazine.

Interpreting the unambiguous phrase in this way is supported by context. The strongest contextual indicator comes from the alternative criterium in U.S.S.G. § 2K2.1(a)(4)(B)(i)(II) for application of the heightened base offense level: an offense involving "a firearm that is described in 26 U.S.C. § 5845(a)" (e.g., a short-barreled shotgun, a short-barreled rifle, a machine gun), firearms that are specially regulated because of their inherent dangerousness. Read in context, the plain text makes clear that the focus of U.S.S.G. § 2K2.1(a)(4)(B) is on the type of firearm involved in the offense and the capability of that firearm. It applies where the offense involves: (1) a semiautomatic firearm capable of accepting a large capacity magazine, or (2) a firearm

---

https://www.merriam-webster.com/dictionary/accept (last visited Mar. 24, 2026).

described in 26 U.S.C. § 5845(a). Focusing on the nature of the firearm involved makes sense: the base offense level is increased if the firearm involved in the offense is particularly dangerous.

As stated above, under the unambiguous meaning of the phrase "capable of accepting," found in U.S.S.G. § 2K2.1(a)(4)(B)(i)(I), a firearm is "capable of accepting" a large capacity magazine if the firearm is one that is able to receive, take, or hold a large capacity magazine.[3] Because Fuller and the United States have jointly stipulated that the phrase "capable of accepting" is unambiguous, the analysis does not continue to the second or third steps of the Kisor and Boler analysis. Accordingly, the Court shall not consider Application Note 2 that interprets the guidelines provision "in its review or application." Roberts, 787 F.Supp.3d at 230; Crawford, 792 F.Supp.3d at 684 (citing Roberts, 787 F.Supp.3d at 230).

B. "Logical Outgrowth" Challenge

Having set forth the unambiguous meaning of the phrase

---

[3] On multiple occasions, in both his papers and during the hearings, Fuller's counsel noted that this definition of "capable of accepting" would result in the higher base offense level of 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(B) being applied "to nearly every common modern handgun (except revolvers) because they are even theoretically capable of accepting a large capacity magazine . . . ." ECF No. 70 at 2. Fuller's counsel has stated that this "extreme interpretation" prompted him to conduct "further research on Amendment 691[,]" which, in turn, led to the "logical outgrowth" challenge now before the Court. Whether this definition of "capable of accepting" would actually result in the higher base offense level of 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(B) being applied "to nearly every common modern handgun (except revolvers)" is not an issue to be decided by the Court in resolving the OBJECTIONS.

"capable of accepting," the analysis now turns to Fuller's argument that U.S.S.G. § 2K2.1(a)(4)(B) is invalid because the mismatch between the proposed amendment and the final adopted amendment violates the notice-and-comment requirements of 5 U.S.C. § 553. As set out above, "[t]he provisions of section 553 of title 5, relating to publication in the Federal Register and public hearing procedure, shall apply to the promulgation of guidelines pursuant to this section" by the Commission. 28 U.S.C. § 994(x). This includes the notice-and-comment provisions found in 5 U.S.C. § 553(b) and (c).

"The requirement of notice and a fair opportunity to be heard is basic to administrative law." Chocolate Mfrs., 755 F.2d at 1102 (citing 1 K. Davis, Administrative Law Treatise § 6.1 at 450 (2d ed. 1978)). "Section 4 of the Administrative Procedure Act (APA) requires that the notice in the Federal Register of a proposed rulemaking contain 'either the terms or substance of the proposed rule or a description of the subjects and issues involved.'" Chocolate Mfrs., 755 F.2d at 1102-03 (citing 5 U.S.C. § 553(b)(3) (1982)). "There is no question that an agency may promulgate a final rule that differs in some particulars from its proposal. Otherwise the agency 'can learn from the comments on its proposals only at the peril of starting a new procedural round of commentary.'" Chocolate Mfrs., 755 F.2d at 1103-04 (citing Int'l Harvester Co. v. Ruckelshaus, 478 F.2d 615, 632 n.51 (D.C. Cir.

1973)). "An agency, however, does not have carte blanche to establish a rule contrary to its original proposal simply because it receives suggestions to alter it during the comment period. An interested party must have been alerted by the notice to the possibility of the changes eventually adopted from the comments." Chocolate Mfrs., 755 F.2d at 1104 (citing Wagner Elec. Corp. v. Volpe, 466 F.2d 1013, 1019 (3rd Cir.1972)). "Although an agency, in its notice of proposed rulemaking, need not identify precisely every potential regulatory change, . . . the notice must be sufficiently descriptive to provide interested parties with a fair opportunity to comment and to participate in the rulemaking." Chocolate Mfrs., 755 F.2d at 1104 (citations omitted).

Adopting the test devised by the First Circuit for determining adequacy of notice of a change in a proposed rule occurring after comments, the Fourth Circuit held that "notice is adequate if the changes in the original plan 'are in character with the original scheme,' and the final rule is a 'logical outgrowth' of the notice and comments already given." Chocolate Mfrs., 755 F.2d at 1105 (citing BASF Wyandotte Corp. v. Costle, 598 F.2d 637, 642 (1st Cir. 1979), cert. denied, 444 U.S. 1096 (1980); S. Terminal Corp. v. EPA, 504 F.2d 646, 659 (1st Cir. 1974)). "Stated differently, if the final rule materially alters the issues involved in the rulemaking or . . . if the final rule 'substantially departs from the terms or substance of the proposed rule,' the notice is

11

inadequate." <u>Chocolate Mfrs.</u>, 755 F.2d at 1105 (internal citation omitted).

**1. Fuller Has Not Forfeited His "Logical Outgrowth" Challenge**

Before moving to the merits analysis, it is necessary to address the Government's position that Fuller's "logical outgrowth" challenge is forfeited. ECF No. 67 at 2. The three cases cited by the United States in support of its position are clearly distinguishable from this case. In <u>Nutter</u>, the Fourth Circuit found the defendant in that case waived any as-applied challenge because he did not raise that challenge in his opening brief. <u>United States v. Nutter</u>, 137 F.4th 224, 228-29 (4th Cir.), <u>cert. denied</u>, 146 S. Ct. 270 (2025). The holding in <u>Nutter</u> appears to be confined to situations where a party, on appeal, fails to present its argument in the opening brief. That is not the case here, so <u>Nutter</u> does not impact Fuller's ability to bring this challenge. <u>Taylor-Sanders</u> stands for the same proposition and fails all the same. <u>United States v. Taylor-Sanders</u>, 88 F.4th 516, 518 (4th Cir. 2023).

In <u>Perez-Guzman</u>, the Ninth Circuit, relying on the six-year limitations period in 28 U.S.C. § 2401(a) for procedural challenges brought in civil actions commenced against the United States, held that Perez's challenge was not timely. <u>Perez-Guzman v. Lynch</u>, 835 F.3d 1066, 1077-79 (9th Cir. 2016). Fuller, of course, is not bringing a civil action against the United States, so the limitations period in 28 U.S.C. § 2401(a) is wholly inapplicable.

Therefore, Fuller has not forfeited his logical outgrowth challenge.

**2. The Final Proposed Amendment Was a "Logical Outgrowth" From the Originally Proposed Amendment**

The question now is whether the final proposed amendment, Amendment 691, as reflected in the current version of U.S.S.G. § 2K2.1(a)(4)(B), was a "logical outgrowth" of the originally proposed amendment to the guidelines provision. In resolving this issue, "the final analysis [in] each case 'must turn on how well the notice that the agency gave serves the policies underlying the notice requirement.'" Chocolate Mfrs., 755 F.2d at 1105 (citing Small Refiner Lead Phase-Down Task Force v. U.S. EPA, 705 F.2d 506, 547 (D.C. Cir. 1983)). "In determining whether a final rule is the logical outgrowth of the proposed rule, the key focus is on whether the purposes of notice and comment have been adequately served." Fertilizer Inst. v. U.S. EPA, 935 F.2d 1303, 1311 (D.C. Cir. 1991) (citing Small Refiner Lead, 705 F.2d at 547). "A rule is deemed a logical outgrowth if interested parties 'should have anticipated' that the change was possible, and thus reasonably should have filed their comments on the subject during the notice-and-comment period." Ne. Maryland Waste Disposal Auth. v. EPA, 358 F.3d 936, 951-52 (D.C. Cir. 2004) (citing City of Waukesha v. EPA, 320 F.3d 228, 245 (D.C. Cir. 2003).

For the reasons that follow, the final proposed amendment,

13

Amendment 691, as reflected in the current version of U.S.S.G. § 2K2.1(a)(4)(B), was a "logical outgrowth" of the originally proposed amendment to the guidelines provision published by the Commission in the Federal Register in 2006. 71 Fed. Reg. 4782. The original proposed amendment presented two options for providing offense level increases for weapons previously covered by 18 U.S.C. § 921(a)(30):

> Under Option One, each of the four base offense level provisions would be based on whether "the offense involved a firearm that is a high-capacity, semiautomatic firearm." "High-capacity, semiautomatic firearm" would be defined as "a semiautomatic firearm that has a magazine capacity of more than [15] cartridges." Option Two would provide an upward departure if the offense involved a high-capacity semiautomatic firearm.

Id. at 4789. The Commission specifically requested comments "regarding whether there is an alternative definition that it should consider." Id. at 4790. In response to this request, Jon M. Sands, on behalf of the Federal Public and Community Defenders, submitted their "comments on the proposed amendments to the firearms guideline, § 2K2.1.1[.]" U.S. Sentencing Comm'n, Comment from March 2006 – Part II at 16, https://perma.cc/65HF-SR6T. The submission from the Federal Public and Community Defenders noted:

> A significant problem with the proposed definition is that many, indeed most, semiautomatic firearms do not have a magazine capacity inherent to them. Instead, magazines have a capacity, and a number of different magazines may fit any specific gun. Would the proposal be interpreted to apply where a firearm is found without a magazine or with a magazine that holds 15 or fewer

14

<u>rounds?</u> The government could argue that an SWD M-11 found without a magazine has a magazine capacity of more than 15 rounds, because there exists a factory-made magazine holding more than 15 rounds. But there also exist factory and after-market ten-round magazines for this gun. <u>Read one way, enhanced base offense levels would hinge on what magazine a defendant was caught possessing. Read another way, the enhanced base offense levels would apply based on a firearm's ability to accept a greater-than-15 round magazine. Aftermarket high-capacity magazines are available for more than a dozen models, so the enhanced base offense levels could be creatively applied to vastly more cases of firearm possession than ever before, including to firearms never actually outfitted with a 15+-round magazine.</u>

. . .

Similarly, magazine capacity for rifles varies widely; they may be 10, 12, 15, 20, 25, 30, or 40 rounds, to name only a few. Does the definition require that 15+ rounds be inserted in the rifle, present in the area of the rifle, or merely potentially used in the rifle even if no such rounds had ever been used in the rifle? The government could argue, and some judges would accept, that the definition encompasses all rifles and pistols that accept a detachable magazine, vastly expanding the application of the enhanced base offense levels without a reasoned justification. Increased litigation and inconsistency in application would result.

<u>Id.</u> at 24-25 (emphasis added).

Clearly, the Federal Public and Community Defenders recognized the ambiguity of the "high-capacity, semiautomatic firearm" definition, explaining that the proposed definition could encompass firearms with the "ability to accept a greater-than-15 round magazine" and, in turn, urged the Commission to abandon or narrow the proposal. <u>See id.</u> The reality that the Federal Public Defenders "were able to discern what was at stake" from the text of the original proposed amendment undermines Fuller's argument

that the final adopted language was not "a logical outgrowth." Manufactured Hous. Inst. v. U.S. EPA, 467 F.3d 391, 399-400 (4th Cir. 2006). Here, (1) the Commission put forth an ambiguous definition in the original proposed amendment; (2) the commentary received from the Federal Public and Community Defenders highlighted this ambiguity; and (3) the Commission responded by adopting one possible meaning of the ambiguous original proposed amendment, as set forth in the language of the final adopted amendment, Amendment 691. Because the original proposal put interested parties on notice of both possible interpretations, the Commission's choice between those interpretations in the final adopted language of Amendment 691 falls squarely within what those parties could have anticipated. Accordingly, the final proposed amendment, Amendment 691, as reflected in the current version of U.S.S.G. § 2K2.1(a)(4)(B), was a "logical outgrowth" of the originally proposed amendment to the guidelines provision because it merely resolves an identified ambiguity by adopting one of the interpretations already apparent to, and anticipated by, interested parties, as evidenced by the commentary received from the Federal Public and Community Defenders. See Edison Elec. Inst. v. U.S. EPA, 2 F.3d 438, 450 (D.C. Cir. 1993) (noting that, while not dispositive on the question of notice, commentary submissions are "at least probative evidence that the notice given was adequate").

16

Fuller's response that notice has been bootstrapped from the comment submitted by the Federal Public and Community Defenders is without merit. While it is true that an agency cannot "bootstrap notice from a comment[,]" that is not what happened here. Small Refiner Lead, 705 F.2d at 555. Instead, as it must under the APA, notice was provided by the Commission itself when it published the ambiguous original proposed amendment. See id. at 549 ("[N]otice necessarily must come—if at all—from the agency."). Just as the Federal Public and Community Defenders did, and without the aid of any commentary, other interested parties would have been able to read the text of the original proposed amendment and discern the ambiguity inherent in the phrase "high-capacity, semiautomatic firearm," thereby putting them on sufficient notice that the Commission might adopt the broader version of the ambiguous original language when setting forth the final amendment.

Having found that the final proposed amendment, Amendment 691, as reflected in the current version of U.S.S.G. § 2K2.1(a)(4)(B), was the "logical outgrowth" of the originally proposed amendment to guidelines provision, the Court need not consider whether "[a]ny notice-and-comment error was harmless." ECF No. 67 at 9.

## V. CONCLUSION

For the reasons set out above, DEFENDANT'S OBJECTIONS TO PSR (ECF No. 56) will be overruled. Accordingly, the appropriate base

17

offense level to be applied at sentencing is 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(B).

/s/

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March 24, 2026

18